# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

LEE F.,[1]

                                          Plaintiff,

        v.                                      3:24-CV-212
                                                  (MJK)

LELAND DUDEK,
Acting Commissioner of Social Security

                                        Defendant.

---

PETER A. GORTON ESQ., for Plaintiff
CHARLES J. KAWAS ESQ., Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff commenced this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the Commissioner of Social Security's final decision denying his application for benefits. This matter was referred to me, for all proceedings and entry of a final judgment, under N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. 9). Both parties filed briefs. (Dkts. 11, 18, 19), which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

## I.  PROCEDURAL HISTORY

On January 13, 2018, Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income, alleging disability dating from February 9, 2010. (T. 10)[2] [3]. His applications were initially denied on May 10, 2018. (T.10). Plaintiff then requested a hearing. (*Id.*). That request was granted. (*Id.*). On November 5, 2019, Plaintiff, represented by Peter Gorton, Esq., and vocational expert, Lisa Cary, testified, in a video hearing, before Administrative Law Judge (ALJ) Shawn Bozarth. (T.9, 10). The ALJ issued an unfavorable decision on January 13, 2020. (T. 7). This became the agency's final determination on August 20, 2020. (T. 797).

Plaintiff then appealed this decision to the Northern District of New York and this Court affirmed the ALJ's decision. (*Id.*, T. 809). Plaintiff appealed that decision to the United States Court of Appeals for the Second Circuit. (T. 811). The Commissioner, there Appellee, moved "for vacatur of the district court's judgment" and asked that court to "remand the case for further proceedings" (T. 847). The Second Circuit granted the motion and relief requested. (*Id.*).

---

[2] All page references are to the Administrative Transcript ("T.") and not the page numbers assigned by the CM/ECF pagination system.

[3] Plaintiff previously filed Title II and Title XVI applications on September 3, 2012, July 20, 2016, and July 28, 2017. (T. 746). These applications were denied. (*Id.*). Plaintiff did not argue that these applications should be opened. (*Id.*). So, the ALJ declined to reopen the determinations on the prior applications. (*Id.*). Thus, the previous rulings on those determinations are final and binding. (*Id.*).

On remand, the Northern District of New York remanded the case to the Appeals Council. (T. 858-60). The Appeals Council then vacated the final decision of the Commissioner and remanded the case to an ALJ to:

- Take any further action to complete the administrative record, including ensuring inclusion of the claimant's January 2018 Disability Application (Title II), and explain how any questions regarding the claimant's prior applications and res judicata were resolved.

- Give further consideration to the medical source opinions and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c and 416.920c.

- Give further consideration to the claimant's maximum residual functional capacity, including the claimant's ability to interact with others and to work on a regular and continuing basis, and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

- Further, if necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments (20 CFR 404.1513a(b)(2) and 416.913a(b)(2)).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant 's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the

3

> vocational expert and information in the Dictionary of
> Occupational Titles (DOT) and its companion publication, the
> Selected Characteristics of Occupations (Social Security Ruling
> 00-4p).

(T. 853-4).

Plaintiff then filed a subsequent claim for Title XVI disability benefits on

April 1, 2022. (T. 854). The appeals council rendered that claim duplicative and

ordered the ALJ to "consolidate the claim files, associate the evidence[,] and issue

a new decision on the consolidated claims." (*Id.*).

Subsequently, on September 14, 2023, Plaintiff, represented by Peter

Gorton, Esq., and vocational expert, Diana L. Kizer, testified in a video hearing

before ALJ Stanley K. Chin. (T.745). The ALJ issued an unfavorable decision on

November 24, 2023. (T.742). That decision became the agency's final decision on

January 23, 2024. (Complaint, Dkt. 1, pg. 1.)

Plaintiff commenced this action on February 13, 2024, challenging the

Commissioner's denial of disability benefits. (*Id.* at 2).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standards

To be considered disabled, plaintiffs seeking DIB or Supplemental Security

Income benefits must establish that they are "unable to engage in any substantial

gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death, or which has lasted or can be

4

expected to last for a continuous period of not less than twelve months …" 42

U.S.C. § 1382c(a)(3)(A). In addition, plaintiffs'

> physical or mental impairment or impairments [must be] of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [they] live[], or whether a specific job vacancy exists for [them], or whether [they] would be hired if [they] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

> The Commissioner uses a five-step process, set forth in 20 C.F.R. §§

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience . . .. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§

404.1520, 416.920.  Plaintiffs have the burden of establishing disability at the first

four steps. *Selian,* 708 F.3d at 418. If they establish that their impairment prevents

them from performing their past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *See Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* But this standard is a very deferential standard of review "—even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, reviewing courts may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains

substantial support for the ALJ's decision. *Id.*; *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs are not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. <u>FACTS</u>

The record includes Plaintiff's medical and mental health treatment history which the parties are familiar with. The Court will refer to the pertinent records in its analysis of the parties' claims.

## IV. <u>THE ALJ'S DECISION</u>

At step one of the five-step-sequential analysis, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2013. (T. 748). Subsequently, they determined that Plaintiff had not engaged in substantial gainful employment since January 13, 2018, the alleged onset date. (*Id.*).

At step two, the ALJ determined that Plaintiff had the "following severe impairments: obesity; major depressive disorder; generalized anxiety disorder; panic disorder with agoraphobia; obsessive compulsive disorder; and personality disorder" (T. 748) (citations omitted). At the same step, the ALJ found that Plaintiff's obstructive sleep apnea, essential hypertension, monoplegia of upper limb, brachial neuritis, type II diabetes mellitus, and gastroesophageal reflux disease were non-severe. (T. 748-9).

At step three, the ALJ determined that Plaintiff does not have a single impairment, or combination of impairments, that equals the severity of impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (T. 749).

At this same step, the ALJ discussed each of the "paragraph B" criteria. (*Id.*). "To satisfy the paragraph B criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning." (*Id.*). These areas of functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; or (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).

Here, the ALJ found that Plaintiff did not have a marked or extreme limitation in any areas of functioning. The ALJ determined that Plaintiff had:

1. A mild limitation in understanding, remembering, or applying information;

2. A moderate limitation in interacting with others;

3. A moderate limitation in concentrating, persisting, or maintaining pace; and

4. And a moderate limitation in adapting or managing.

(T. 749-50).

And because Plaintiff did not have at least two marked or one extreme limitation, the ALJ determined that the paragraph B criteria was not satisfied. (T. 751).

The ALJ also discussed the "paragraph C" criteria. (T. 751). Paragraph C requires a medically documented history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(c). Here, the ALJ found that the paragraph C criteria were not met because Plaintiff has "demonstrated improvement in mood and anxiety and medication management and therapy." (T. 751).

Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is limited to no ladders, ropes, or scaffolds with occasional ramps or stairs, occasional stooping, occasional crawling, frequent kneeling, and frequent crouching. He is limited to frequent use of moving mechanical parts and exposure to unprotected heights. He is limited to simple and repetitive tasks in a routine work setting p erformed in a work environment with no assembly line work or work t hat requires hourly quotas involving only simple work-related decisions and occasional workplace changes. He is limited to occasional, brief, and superficial interaction with the public and occasional interaction with coworkers and supervisors.

(T. 751).

In making the RFC determination, the ALJ stated that they considered all of Plaintiff's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (T. 751). The ALJ further noted that they considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. (*Id.*). After considering the remaining record evidence, the ALJ concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …" (T. 752).

At step four, the ALJ, relying on the impartial vocational expert's testimony, found that Plaintiff was unable to perform past relevant work. (T. 760). Finally, at step five, the ALJ found that there are a "significant" number of jobs in the national economy that Plaintiff could do. (*Id.*). Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, from the onset date through the decision date. (T. 761).

## V. ISSUES IN CONTENTION

Plaintiff argues that the ALJ's decision should be reversed and remanded for four reasons: (1) the ALJ cherry picked evidence; (2) the ALJ failed to assess any limitations on staying on task or maintaining attendance; (3) the ALJ improperly assessed the medical opinions of LCSW Hagerbaumer, Drs. Moore, Harding, Weitzen, Shaprio, Kamin, and Harding; and (4) the ALJ's conclusion that Plaintiff can work occasionally with the public, co-workers, and supervisors is erroneous. (Plaintiff's Br., Dkt. 11, pgs. 18, 30, 33, 34).

In opposition, the Commissioner argues that the ALJ did not cherry pick the evidence and substantial evidence supports the ALJ's decision. (Def. Br., Dkt. 18, pg. 6).

## VI. DISCUSSION

For the reasons stated below, the Court agrees with Plaintiff that the ALJ impermissibly cherry-picked evidence to support their conclusion. Accordingly, the

Court reverses and remands the ALJ's decision for further proceedings consistent with this Memorandum-Decision and Order.

### A. Legal Standard

Under the Social Security Act, when an ALJ's final denial of benefits is appealed, "the relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Chichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (cleaned up). Reviewing courts "must conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). Courts will "overturn a SSA decision only if the ALJ applies an incorrect legal standard, of if the ALJ's ruling is not supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022). An ALJ's decision is not supported by substantial evidence if they "cherry pick the positive aspects" while "ignoring conflicting evidence from the same source." *Id.* at 94; *Lee G. v. Comm'r of Soc. Sec.,* No. 5:19-CV-1558 (DJS), 2021 WL 22612, at *5 (N.D.N.Y. 2021). If the ALJ does this, the reviewing court will reverse and remand their determination. *See Loucks v. Kijakazi*, No. 21-1749,

2022 WL 2189293, at *2 (2d Cir. 2022) (remanding because "the ALJ selectively relied on portions of the record").[4]

## B. Analysis

### 1. Drs. Moore and LCSW Hagerbaumer

The longitudinal record suggests that Plaintiff suffers from multiple marked to extreme limitations. Dr. Mary Ann Moore, one of the Commissioner's consultive examiners, examined Plaintiff and opined that he has "marked limitations" in "using reason and judgement to make work related decisions[,]" marked limitations "interacting adequately with supervisors, co-workers, or the public[,]" and marked limitations "sustaining an ordinary routine and regular attendance at work" (T. 453). Likewise, LCSW Hagerbaumer, who treated Plaintiff, opined that he had extreme limitations in his ability to respond appropriately to ordinary stressors in a work setting with simple tasks, extreme limitations in his ability to maintain regular attendance without interruptions from psychological-based symptoms, and marked limitations on his ability to perform activities within a schedule, be punctual, and perform at a consistent pace. (T. 577).

---

[4] The Court acknowledges Defendant's argument that it is often the case that a "cherry-picking" argument would require the court to impermissibly reweigh the evidence. See Deft. Brief, dkt. 18 at 19. Here, this court's analysis identifies the evidence that was cherry picked and will leave it to the Commissioner to reweigh all of the medical evidence on remand.

Yet the ALJ rejected Dr. Moore's and LCSW Hagerbaumer's findings of marked limitations and extreme limitations for similar reasons. The ALJ reasoned that:

1. Plaintiff's May 2018 report of exacerbated anxiety was because of his daughter's birth;

2. Plaintiff only had mild tremors due to being anxious;

3. In May 2019, Plaintiff's primary care provider noted that his anxiety symptoms were under fair control;

4. In April 2020, Plaintiff reported feeling bored staying at home and would like to go out occasionally;

5. In May 2021, Plaintiff reported that he got to meet with his daughter's teachers and felt more relaxed about her attending school;

6. In May 2021, Plaintiff reported taking his medication and going out in the community and not worrying about what others think;

7. In July and September 2021, Plaintiff reported that his anxiety was under good control;

8. During his July 2022 consultive examine, Plaintiff reported that he was currently not getting mental health treatment, and his primary care provider prescribed his medications;

9. And finally, during all Plaintiff's mental status exams, his memory attention, concentration, insight, judgment were fair, good, or intact.

(T. 758-9).

The ALJ's reasoning is flawed. First, Plaintiff reported increased anxiety in May 2018, but his daughter was born in early 2017. (T. 263, 795). So, Plaintiff's increased anxiety, whether it was because of her birth or her health issues, in May

2018—over a year later—indicates some level of limitation.[5] Ironically, the
information the ALJ relies on comes from LCSW Hagerbaumer's treatment notes,
and LCSW Hagerbaumer's opined that Plaintiff *only* has marked and extreme
limitations. (T. 577). In other words, the ALJ relied on the treatment notes of a
provider—whose conclusions they found unpersuasive— to support their
conclusion, which was the *opposite* of what the doctor concluded. That is classic
cherry-picking. *Tara S. v. Berryhill*, 2019 WL 121243, at *6 (N.D.N.Y. 2019)
(quoting *Dowling v. Comm'r of Soc. Sec.*, 2015 WL 5512408, at *11 (N.D.N.Y.
2015)) ("Cherry picking 'refers to improperly crediting evidence that supports
findings while ignoring conflicting evidence from the same source.'").

   The Commissioner's response to this argument misses the point. The
Commissioner acknowledges that Plaintiff's exacerbated anxiety was due to
Plaintiff's daughter's health issues. (T. 263; Def. Br., Dkt. 18, pg. 10). But this
argument misses its mark because it was misled by the ALJ's decision. The ALJ's
decision focuses only on Plaintiff's daughter exacerbating his anxiety symptoms.
But a fuller read of the medical notes the ALJ relied upon (but did not fully
address) tells a different story. According to LCSW Hagerbaumer, Plaintiff

---

[5] The ALJ's opinion does not mention Plaintiff's daughter's health issues. It only mentions her
birth. That decision can be read two ways. First, in good faith, the ALJ thought they were being
clear that the health issues were the focus of their statement. Or second, in bad faith, the ALJ
sought to discredit Plaintiff by saying his daughter's birth over a year ago could not possibly be
the reason for his anxiety symptoms worsening.

continued "to exhibit low self-esteem" and has "on-going anxiety symptoms such as constant worrying, troubles leaving his house, and fears about his death" (T. 263). All of this led LCSW Hagerbaumer to conclude that "this level of care is *needed"* to continue "skill building and symptom management." (*Id.*) (cleaned up) (emphasis added). In other words, Plaintiff suffered from such consistent symptoms that, ultimately, Dr. Hagerbaumer concluded that he had marked to extreme limitations. (T. 577). Plainly, it was not just Plaintiff's daughter's health issues causing his anxiety symptoms to be as bad as they were.

Second, the ALJ's conclusory statement that Plaintiff had mild tremors does not support their position. In their decision, the ALJ noted that Plaintiff "had only a mild tremor due to being anxious." (T. 757, 759). But that statement is conclusory. It says nothing about Plaintiff's limitation. Flatly, the ALJ needed to state *how* Plaintiff's tremors did not limit his ability to perform work. *See Patricia v. Saul, No. 19-CV-6260F, 2021 WL 722473 (W.D.N.Y. 2021)* (affirming an ALJ's denial of benefits because the ALJ's decision described how mild tremors caused by anxiety is not a severe limitation).

Third, a medical document that states that Plaintiff's related symptoms are under "fair control" does not mean that Plaintiff was not limited. The ALJ notes that Plaintiff's symptoms are under "fair control." (T. 553, 757, 759). But conveniently, the ALJ leaves out the following sentences. Plaintiff reported to

Nurse Practitioner Melissa Skiadas that "functioning" was "very difficult" (T. 553). In fact, Plaintiff had "anxious/fearful thoughts, compulsive thoughts, difficultly concentrating, diminished interest or pleasure, easily startled, excessive worry, feelings of guilt paranoia, racing thoughts and restlessness[.]" *Id.* NP Skiadas also noted that there was "worsening of previously reported symptom." *Id.* Yet the ALJ did not address any of these symptoms.

The Commissioner's argument that the ALJ did not cherry pick in this respect is unconvincing. In their argument, the Commissioner contends that NP Skiadas's treatment note "fully" negates Plaintiff's assertion of cherry picking because the record shows that Plaintiff's anxiety was under fair, not total, control. (Def. Br., Dkt. 18, pg. 12). But, again, the Commissioner's argument misses the mark. In a 140-word note the ALJ (and Commissioner) focused on 31 words, to make their point. But they ignored the other *109*, which detracts from their conclusion:

> Related symptoms are *fair control* (*sic*). There is *continuation of initial symptoms, improvement of initial symptoms and worsening of previously reported symptoms*. The patient reports functioning as very difficult. The patient presents with anxious/fearful thoughts, compulsive thoughts, difficulty concentrating, diminished interest or pleasure, easily startled, excessive worry, feelings of guilt paranoia, racing thoughts and restlessness but denies fatigue or poor judgment. The patient's risk factors include relationship problems and sick child. The anxiety is aggravated by conflict or stress, lack of sleep and traumatic memories, The patient's relieving factors are a good response to medication (Paxil). The anxiety is associated with headache and trembling. The patient denies any chronic pain, irritability, nausea,

> sweating and vomiting. Additional information: *states overall has been ok* - continues to struggle with leaving home and being out in crowds - taking medications and seeing counseling.

(Def. Br., Dkt, 18, at 12) (quoting T. 553) (emphasis in Def. Brief).

The ALJ's failure to address the *entire* note, contrary to the Commissioner's contention, enhances Plaintiff's argument that the ALJ engaged in impermissible cherry picking. The ALJ does not get to use the phrase "fair control" as a tarp to cover the pool of symptoms Plaintiff is experiencing. *Rucker v. Kijakazi*, 48 F.4th 86, 94 (2d Cir. 2022) (noting that "it was not permissible for the ALJ to 'cherry-pick' the positive aspects of the progress reports") (citation omitted).

Fourth, Plaintiff's 2020 report to Dr. Sobia Mirza, a psychiatrist, that he feels "bored staying at home all the time" does not support the ALJ's rejection of Plaintiff's marked limitation. (T. 1743) First, Plaintiff's statement that he felt bored inside does not necessarily indicate, like the ALJ contends, that Plaintiff would prefer "to go out occasionally." (T. 759).  To make this inference, the ALJ needed to ignore Plaintiff's March 2020 report to LCSW Hagerbaumer, where he said, "I'm bored I guess … it's not like I did much before but now I don't do anything and it just seems like one long day."  (T. 1681). Taken together, Plaintiff's statement can only be understood as a commentary on the monotonous experience of COVID-19 lockdown—not a desire to go outside like the ALJ contends. But even if it was such a desire, later evidence shows it did not last. In June 2022,

Plaintiff reported to NP Skiadas that he was "not leaving the house as much." (T. 1277). In other words, once lockdown was lifted Plaintiff still was not leaving the house often.

The second error with the ALJ's argument is that it assumes too much in the context of the entire medical record. The upshot of the ALJ's reasoning is that: Plaintiff can work because he wanted to go outside. This is wrong. It requires no citation to say that a person's desire to go outside has no bearing on their ability to go outside, and even less bearing on their ability to perform at a job.

Fifth, the ALJ relies on Plaintiff's May 2021 report to Social Worker Donna Fletcher—that he "got to meet with his daughter's teachers and felt more relaxed about her attending school and that he is taking his medication and going out in the community and not worrying about what others think"— and Plaintiff's July and September 2021 reports to Dr. Mirza — that "his anxiety has been in good control"—to support their decision. (T. 759, 1538, 1572).

What the ALJ fails to include are Plaintiff's contrary statements. In August 2021, Plaintiff told social worker Fletcher that he "continues to have anxiety regarding his daughter starting school this year," and in September 2021, he remained "anxious about her returning to school due to her special needs." (T. 1545, 1547). And more recently, contrasting his anxiety being under control, Plaintiff, in May 2023, reported to Dr. Softiya Umar that he "still experiences panic

attacks when in public" (T. 1490). Altogether, Plaintiff's reports show cycles of improvement and worsening of his symptoms. That is normal. *See Estrella*, 925 F.3d at 97 ("Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence"). Yet, the ALJ's decision does not account for the up and down nature of Plaintiff's mental illness. And that is impermissible. *Id.* ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working").

### 2. Dr. Shapiro

It is unclear why the ALJ rejected Dr. Jeanne Shapiro's finding of marked limitations. Dr. Shapiro, a consultive examiner, opined that Plaintiff has "marked limitations interacting adequately with supervisors, co-workers, or the public" and "marked limitations regulating emotions, controlling behaviors, and maintain wellbeing." (T. 1293). The ALJ found Dr. Shapiro's findings of marked limitation inconsistent with the consultative exam or the record. (T. 760). Nevertheless, the ALJ does not explain how Dr. Shapiro's findings of marked limitation are unsupported. *See Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 17 (S.D.N.Y. 2022) (noting that an ALJ's failure to address the supportability and consistency of medicals source opinions is grounds for reversal). In fact, Dr. Shapiro's findings are consistent with Dr. Moore's and LCSW Hagerbaumer's findings, respectively. (T.

450, 577).  Interestingly enough, the ALJ found that Drs. Weitzen and Kamin's

findings that Plaintiff has a limitation in responding '"appropriately to supervision

in a low contact environment' is vague and [is] not set forth in vocationally

relevant terms such as occasional interaction." (T. 758). This leaves the ALJ with

one clear finding of moderate limitations on Plaintiff's ability to interact with

coworkers and supervisors, and three findings of marked to extreme limitations on

Plaintiff's ability to function in a workplace. It seems, therefore, that the outlier is

Dr. Harding findings—which the ALJ found to be partly persuasive—not Dr.

Shapiro's.[6] So, it is unclear *why* the ALJ rejected Dr. Shapiro's finding of marked

limitations.  To be clear, the ALJ need not analyze every piece of conflicting

evidence. *See e.g. Monguer, supra.* But an ALJ's conclusory statement—that fails

to address the evidence that detracts from their conclusion—is a statement not

supported by substantial evidence. *See Williams on behalf of Williams v. Bowen*,

859 F.2d 255,258 (2d Cir. 1988). ("To determine on appeal whether an ALJ's

findings are supported by substantial evidence, a reviewing court considers the

whole record, examining the evidence from both sides, because an analysis of the

substantiality of the evidence must also include that which detracts from its

weight").

---

[6] The record does not reflect that Drs. T. Harding, Kamin, and Weizen, non-examining state
agency consultant, completed full reports. It only reflects that the doctors completed Prior
Administrative Medical Findings worksheets.

* * *

In sum, the factors the ALJ relied on are insufficient to reject Drs. Moore, Hagerbaumer, and Shapiro's findings of marked and extreme limitations. The ALJ's decision paints a picture of the plaintiff that is neither complete nor accurate. The real picture of Plaintiff portrays marked to extreme limitations on his vocational abilities caused by his mental health conditions as reflected in the opinions of three out of the five doctors who examined and or treated him.  Yet, the ALJ picked what they needed to get to their desired outcome. This was reversable error.  As a result, the Court reverse and remand's the ALJ's decision.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. 11) be **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 18) be **DENIED**; and it is further

**ORDERED**, that the decision of the Commissioner be **REVERSED**, and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum-Decision and Order.


Dated:  March 18, 2025

　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　Hon. Mitchell J. Katz
　　　　　　　　　　　　　　　　U.S. Magistrate Judge